**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **VICKY LYN KNAPP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CAUSE NO. 1:20-cv-00011-PPS-SLC** |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** *sued as Andrew Saul,* | ) |
| *Commissioner of the Social Security* | ) |
| *Administration,* | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Vicky Lyn Knapp appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application under the Social

Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI").  (ECF 1).  The appeal was referred to the undersigned Magistrate Judge on

March 19, 2020, by District Judge Philip P. Simon pursuant to 28 U.S.C. § 636(b) and this

Court's General Order 2018-14A for the issuance of a Report and Recommendation.  (ECF 10).

Having reviewed the record and the parties' arguments, I FIND that two of Knapp's

arguments warrant a remand of the Commissioner's final decision, and accordingly,

RECOMMEND that the Commissioner's decision be REMANDED.  This Report and

Recommendation is based on the following facts and principles of law.

## I. FACTUAL AND PROCEDURAL HISTORY

Knapp applied for DIB and SSI in July 2012 alleging disability as of June 29, 2012. (ECF 14; ECF 17 Administrative Record ("AR") 84, 212, 218).[1]  Knapp's application was denied initially and on reconsideration.  (AR 1169-79, 1214-20).  Following a timely request and a hearing, administrative law judge Jennifer Fischer rendered an unfavorable decision on September 27, 2013, which Knapp appealed to the district court.  (AR 27-38); *see also Knapp v. Comm'r of Soc. Sec.*, 1:14-cv-00278.  The parties subsequently filed a joint motion to remand the case for further proceedings, which the Court granted.  (AR 1193).

On March 23, 2016, after another hearing, administrative law judge William D. Pierson ("the ALJ") rendered another unfavorable decision, which Knapp again appealed to the district court.  (AR 1047-63); *see Knapp v. Comm'r of Soc. Sec*, 1:16-cv-00191.  On May 19, 2017, Judge William C. Lee entered an Opinion and Order affirming the ALJ's decision.  (AR 1954-82).  On July 22, 2017, Knapp appealed Judge Lee's decision to the Seventh Circuit Court of Appeals, which on July 12, 2018, vacated Judge Lee's Order and remanded the case for further proceedings.  *See Knapp v. Berryhill*, 741 F. App'x 324 (7th Cir. 2018).  Accordingly, this Court remanded the matter to the administrative level (AR 1983), and the Appeals Council vacated the ALJ's prior decision.  (AR 1987-88).

In the interim, in July 2016, Knapp filed a new application for disability benefits, which was also denied initially and on reconsideration.  (AR 1993).  After a subsequent hearing on February 7, 2018, administrative law judge Fredric Roberson again reviewed Knapp's

---

[1] The Commissioner inadvertently failed to include the transcript of Knapp's July 8, 2019, hearing before the ALJ. (ECF 14; *see also* ECF 16).  Accordingly, the Commissioner filed a supplement to the transcript.  (ECF 17). Because the AR pagination is consistent between the two filings (ECF 14, 17), the Court will continue to use the AR pagination.

application and rendered an unfavorable opinion on June 14, 2018.  (AR 1990-2003).  Following

the remand of Knapp's initial case from the Seventh Circuit, the Appeals Council combined the

two cases.  (AR 2021-23).

On July 8, 2019, the ALJ conducted a second hearing where Knapp, who was represented

by counsel, testified, as did Knapp's domestic partner and a vocational expert ("VE").  (AR

3321-81).  On September 11, 2019, the ALJ rendered another unfavorable decision, concluding

that Knapp was not disabled because she still could perform jobs that exist in a substantial

number in the national economy.  (AR 1871-95).  Because Knapp did not file any exceptions to

the ALJ's most recent decision, and the Appeals Council did not assume jurisdiction of the case,

that decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.984, 416.1484.

Knapp filed a complaint with this Court on January 6, 2020, seeking relief from the

Commissioner's final decision.  (ECF 1).  In her appeal, Knapp alleges that the ALJ:  (1) failed

to offer a significant number of jobs which she could perform in the national economy, (2) failed

to properly consider the opinion of Knapp's treating physician, and (3) failed to give due weight

to the Commissioner's psychological examiner.  (ECF 19 at 5).  Knapp also alleges that remand

is necessary because she was deprived of due process by the "ALJ's unmistakable beef" with the

Seventh Circuit's remand of the case.  (*Id.* at 19-21).

At the time of the ALJ's most recent decision, Knapp was forty-seven years old (AR 212,

218, 1895), had the equivalent of a high school education (AR 1584, 1894), and had relevant

work experience as a fast food manager, assembly press operator, order picker, and kitchen

3

helper (AR 1893).  In her application, Knapp alleged disability due to nerve damage and

fibromyalgia caused by breast cancer, arthritis, and anxiety.  (AR 84, 97, 112, 126).[2]

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

(citation omitted).  The decision will be reversed "only if [it is] not supported by substantial

evidence or if the [ALJ] applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863,

869 (7th Cir. 2000) (citation omitted).  "Substantial evidence must be more than a scintilla but

may be less than a preponderance."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)

(citations omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative

record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or

substitute [its] own judgment for that of the Commissioner."  *Clifford*, 227 F.3d at 869 (citations

omitted).  "Rather, if the findings of the Commissioner . . . are supported by substantial evidence,

they are conclusive."  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In

other words, so long as, in light of all the evidence, reasonable minds could differ concerning

---

[2] Knapp lists fibromyalgia caused by breast cancer and fibromyalgia as separate conditions on her application.  (*See id.*).

whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. The Law

Under the Act, a claimant is entitled to DIB and SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A), *see also* 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: "(1) whether the claimant is currently [un]employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) . . . whether she can perform her past relevant work; and (5) whether the claimant is incapable of performing any work in the national economy."[3] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The

burden of proof lies with the claimant at every step except the fifth, where it shifts to the

Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On September 11, 2019, the ALJ issued a decision that ultimately became the

Commissioner's final decision. (AR 1871-95). At step one, the ALJ concluded that Knapp had

not engaged in substantial gainful activity since her alleged onset date, June 29, 2012. (AR

1874). At step two, the ALJ found that Knapp had the following severe impairments:

osteoarthritis of multiple joints; lumbar degenerative disc disease with stenosis, but findings of

spondylosis without radiculopathy or myelopathy; neuropathy; thoracic kyphosis/degenerative

changes of the thoracic spine; hypothyroidism; osteoarthritis of the hips; obesity; degenerative

changes of the shoulder AC joints; history of hammer toes; major depressive disorder; and

history of diagnoses of attention deficit disorder ("ADD"), insomnia, generalized anxiety

disorder, and panic disorder. (*Id.*).

At step three, the ALJ concluded that Knapp did not have an impairment or combination

of impairments severe enough to meet or equal a listing. (AR 1878). The ALJ then assigned

Knapp the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) and 416.967(a) except: The claimant is limited to
> lifting, carrying, pushing, and pulling less than ten pounds frequently and ten
> pounds occasionally. The claimant can sit at least six hours in an eight-hour
> workday and stand and/or walk two hours in an eight-hour workday. The
> claimant should not climb ropes, ladders, or scaffolds. The claimant should not
> kneel, crouch, and crawl. The claimant can occasionally bend and stoop in
> addition to what is required to sit. The claimant can occasionally use ramps and
> stairs. Aside from use of ramps and stairs on an occasional basis, the claimant
> should not work upon uneven surfaces. The claimant should avoid working upon
> wet and slippery surfaces. The claimant can perform the balance required of such

activities.  The claimant should avoid work within close proximity to open and exposed heights and open and dangerous machinery, such as open flames and fast moving exposed blades.  The claimant should not perform overhead work activity.  The claimant requires a cane for prolonged ambulation and when upon uneven surfaces.  The claimant is limited to tasks involving simple instructions, defined as tasks and instructions that can be learned through short demonstration, or when beyond short demonstration, up to and including one month, or in other words, SVP levels 1 and 2.  The claimant is limited to work within a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting.  The claimant can tolerate predictable changes in the work environment.  The claimant can make simple work-related decisions and remember simple work-like procedures.  The claimant can meet production requirements in an environment that allows her to sustain a flexible and goal oriented pace.  The claimant is limited from fast-paced work, such as assembly line production work, with rigid or strict productivity requirements.  She is limited to superficial interaction with coworkers, supervisors, and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation.  Contact with supervisors still involves necessary instruction.  Prolonged conversation is not necessary for task completion.  When faced with such a work environment and type of tasks, the claimant can remember the associated work-like procedures.  The claimant can maintain the focus, persistence, concentration, pace, and attention required to engage in such tasks for two-hour increments, and for eight-hour work days, and within the confines of normal work breaks and lunch periods.

(AR 1880-81).

The ALJ found at step four that Knapp was unable to perform her past relevant work.

(AR 1893).  At step five, though, the ALJ found that, given her age, education, work experience,

and RFC, Knapp could perform certain unskilled, sedentary jobs that exist in substantial numbers

in the national economy including polishing machine operator, sorting machine operator, and

wire insulator.  (AR 1894).  As such, Knapp's application for DIB and SSI was denied.  (AR

1895).

### C.  The ALJ's Step 5 Determination

In her first argument, Knapp points out that while the ALJ found that Knapp could

perform a substantial number of jobs in the national economy, he also found that "the total

7

number of jobs would be approximately 120,000." (AR 1894; *see also* AR 3375). Noting that

120,000 jobs account for less than .080% of the jobs in the national economy, Knapp alleges that

the Commissioner has failed to sustain his Step 5 burden of showing that she could perform a

significant number of jobs in the national economy. (ECF 19 at 12-13 (citing *Sally S. v.*

*Berryhill*, No. 2:18cv460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019))). Accordingly,

Knapp maintains that the Commissioner's Step 5 analysis is not supported by substantial

evidence, necessitating remand. (*Id.*).

At the most recent administrative hearing, the ALJ questioned the VE whether a

hypothetical individual with Knapp's RFC could perform any occupations existing in the

national economy. (AR 3372-75). The VE responded that such an individual could perform the

occupations that the ALJ listed in his most recent decision. (AR 1894, 3375). That is, the VE

testified that such hypothetical person could perform as a polishing machine operator, sorting

machine operator, or wire insulator. (AR 3375). Further, the VE testified that approximately

29,000 polishing machine operator jobs exist in the national economy, as well as approximately

22,000 sorting machine operator jobs and approximately 16,500 wire insulator jobs. (*Id.*). The

VE also estimated that there would be about 120,000 total unskilled sedentary jobs in the

national economy that a hypothetical individual with Knapp's RFC could perform. (*Id.*).

While Knapp is correct that it is the Commissioner's burden to show that "other work

exists in significant numbers in the national economy that [the claimant] can do,", 20 C.F.R. §§

404.1560(c)(2), 416.960(c)(2); *see Britton v. Astrue,* 521 F.3d 799, 803 (7th Cir.2008) (per

curiam), the ALJ has clearly satisfied that burden here. While 120,000 jobs may make up only a

small portion of the total jobs in the national economy, such a number is "significant" in the

context of the relevant caselaw. Indeed, "[a]s few as 174 jobs has been held to be significant, . . .

8

and it appears to be well-established that 1,000 jobs is a significant number." *Liskowitz v.*

*Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (internal citation omitted) (collecting cases).

Accordingly, even when considering just the three jobs identified by the VE, the ALJ provided a

sufficient number of jobs through his identification of 29,000 polishing machine operator jobs,

22,000 sorting machine operator jobs, and 16,500 wire insulator jobs. Accordingly, the ALJ's

Step 5 determination is supported by substantial evidence.

Further, Knapp's reliance on *Sally S.* is misplaced. The ALJ was not required to limit his

analysis solely to the region where Knapp resides. *See* 42 U.S.C. § 423(d)(2)(A) ("[W]ork

which exists in the national economy means work which exists in significant numbers either in

the region where such individual lives or in several regions of the country." (internal quotation

marks omitted)); *see also* 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). Indeed, in *Primm v. Saul*,

the Seventh Circuit found that "110,000 jobs nationally . . . are . . . enough to support the ALJ's

finding." 789 F. App'x 539, 546 (7th Cir. 2019) (citing *Liskowitz*, 559 F.3d at 743). Further,

"[c]ourts have frequently used national numbers to determine that a sufficiently significant

number of jobs exists that a claimant can perform and deny Social Security disability benefits."

*Isaacs v. Barnhart*, No. 4:05-cv-0185-DFH-WGH, 2006 WL 3240114, at *8 (S.D. Ind. Oct. 13,

2006). While some courts have relied on *Sally S.* and discounted the precedent cited *supra*, *see*

*James A. v. Saul*, 471 F. Supp. 3d 856, 860 (N.D. Ind. July 10, 2020) (finding 14,500 jobs in the

national economy is not a significant number of jobs), others have found less jobs than those at

issue here to be significant, *see Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at

*7 (N.D. Ill. May 31, 2019) (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir.

2016) (affirming a decision identifying 6,000 jobs nationwide); *Gutierrez v. Comm'r of Soc.*

*Sec*, 740 F.3d 519, 528 (9th Cir. 2009) (affirming a decision identifying 25,000 nationwide)).

Accordingly, the undersigned believes that the ALJ has supported his decision—at least on this point—with enough "evidence as a reasonable mind might accept as adequate to support [this] conclusion." *Schmidt*, 395 F.3d at 744.  Therefore, remand is not warranted by Knapp's step-five argument.

### D.  Dr. Kidder's Opinion

Knapp next asserts that the ALJ failed to properly consider the opinion of her treating physician, Dr. Shawn E. Kidder, D.O.  More specifically, Knapp contends that the ALJ again failed to properly weigh Dr. Kidder's opinion, arguing that the opinion was formed in support of Knapp's application for Medicaid and thus amounted to an opinion that Knapp was unable to work even twenty hours per week.  (ECF 19 at 15 (citing AR 904, 1432)).  Knapp also contends that the ALJ failed to consider her physical and mental impairments as documented by Dr. Kidder in the aggregate as required.  (*Id.* at 15-16 (citing 20 C.F.R. §§ 404.1523, 416.923)).  Still more, Knapp argues that this case should be remanded because the ALJ failed to consider evidence that did not support his decision, and failed to follow the Appeals Council's order on remand to conform further proceedings to the Seventh Circuit's order on appeal.  (*Id.* at 16-17).

The Seventh Circuit has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Each medical opinion, other than a treating physician's opinion, must be evaluated pursuant to factors articulated in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to determine the proper weight to apply to it. *See White v. Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005).  One factor an ALJ may consider is the extent to which an opinion is supported by the record. *Long v. Comm'r Soc. Sec.*, No. 2:15-CV-408-JEM, 2017 WL 1161012, at *3 (N.D. Ind.

Mar. 28, 2017) (quoting SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996)).  Finally,

although an ALJ may decide to adopt the opinions in a medical source statement concerning the

ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved

to an ALJ.  SSR 96-5p, 1996 WL 374183, at *4.

On April 25, 2013, Dr. Kipper offered the following the narrative medical source

opinion:

> Presently [Knapp] is suffering from BREAST CANCER,
> HYPERTENSION, NEUROPATHY, ADULT ADD,
> DEPRESSION, OVERACTIVE BLADDER, ANXIETY, BACK
> PAIN, HYPERLIPIDEMIA, POLYCYSTIC KIDNEY
> DISORDER AND VERICOSE VEINS.
>
> PRESENTLY MS. KNAPP IS UNABLE TO WORK DUE TO
> HER COMBINED EFFECT OF HER MEDICAL CONDITION.
> CONDITIONS ARE NOT EXPECTED TO IMPROVE IN THE
> NEXT TWO YEARS.

(AR 904).  In the ALJ's initial decision, while discussing Knapp's RFC, the ALJ afforded Dr.

Kidder's opinion little weight, noting that Dr. Kidder is not an orthopedic or mental health

specialist and that his opinion merely restated diagnoses without additional reasoning.  (AR

1058).  The ALJ also noted that Dr. Kidder did not cite to any supportive medical records, that

Dr. Kidder's own treatment notes reported normal clinical findings, and that Dr. Kidder's

assessment was inconsistent with that of the State Agency physicians.  (*Id.*; *see, e.g.*, AR 821

("PSYCH: no anxiety, no depression . . ."), 825 ("Mental Status is intact.  Gait is normal"), 830

(same)).

On appeal, the Seventh Circuit found that "the ALJ's reasons for discounting Dr.

Kidder's opinion were invalid."  *Knapp*, 741 F. App'x at 327.  In particular, the Appellate Court

held that "[w]hile Dr. Kidder's opinion that Knapp was unable to work was not entitled to

11

controlling weight, it had to be considered." *Id.* (citing SSR 96-8p, 1996 WL 374184 (July 2,

1996); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)).  The Court also faulted the ALJ for

failing to consider Dr. Kidder's "decade-long treating relationship with Knapp," the consistent

opinion of the State Agency psychologist Dan Boen, Ph.D., and for failing to "acknowledge that

Dr. Kidder was the only physician who treated Knapp for both her mental and physical

ailments." *Id.* at 328.  Still more, the Seventh Circuit found that the ALJ had impermissibly

cherry-picked evidence from Dr. Kidder's treatment notes, *id.* at 328-29, and improperly

discounted her complaints of concentration problems by suggesting there was a lack of support

in Dr. Kidder's notes without allowing Knapp to address the discrepancy at the hearing, *id.* at

329-30 (citing *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Craft v. Astrue*, 539 F.3d

668, 679 (7th Cir. 2008)).

   In his most recent decision, the ALJ "continue[d] to give the opinion expressed in Dr.

Kidder's narrative little weight . . . ."  (AR 1888).  In doing so, the ALJ maintained that Dr.

Kidder's opinion, was "inconsistent with his own treatment notes, and . . . does not specify any

impairment-related limits and their effect on [Knapp's] ability to perform work-related

activities."  (*Id.*).  Further, the ALJ noted that many of the conditions described by Dr. Kidder in

his 2013 opinion seem to have improved with treatment.  (AR 1887; *see*, *e.g.*, AR 872 ("[Knapp]

is doing quite well other than having increasing hot flashes. . . . Patient remains without clinical

evidence of disease.  There is no need for intervention."), 873 ("[Knapp] is status post bilateral

mastectomy with implants in place.  There is no local recurrence or palpable masses on either

side of the chest wall.")).  The ALJ also asserted that it was the Appellate Court, rather than

himself, who impermissibly cherry-picked evidence contrary to his initial assessment.  (AR

1888).  The ALJ, however, provided no additional analysis regarding the length of Dr. Kidder's

12

and Knapp's treating relationship, or of Dr. Kidder's position as the only physician who treated

Knapp for both her mental and physical ailments.

Remand is necessary at least on the last point raised by Knapp.  In his most recent

opinion, the ALJ continued to maintain that Dr. Kidder's opinion is inconsistent with his own

treatment notes.  (AR 1887).  The Seventh Circuit, however, has already rejected that conclusion,

ruling that when "[v]iewed in their entirety, the notes reveal Dr. Kidder's diagnoses of mental

impairments and his recommendation of leg elevation for painful swelling."  *Knapp*, 741 F.

App'x at 328.  Accordingly, the Seventh Circuit found that the ALJ had misapplied the factors

for considering a treating medical source's opinion in accordance with 20 C.F.R. §§ 404.1527(c)

and 416.927(c)—specifically by failing to consider the length of Dr. Kidder's and Knapp's

treating relationship.

"The law of the case doctrine, which requires the trial court to conform any further

proceeding on remand to the principles set forth in the appellate opinion unless there is a

compelling reason to depart, . . .is applicable to judicial review of administrative decisions."

*Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (internal citation and quotation marks

omitted).  The doctrine "requires the administrative agency, on remand from a court, to conform

its further proceedings in the case to the principles set forth in the judicial decision, unless there

is a compelling reason to depart."  *Id.*  This includes instructions to more fully consider the

factors governing the weight afforded to treating physicians.  *See Middleton v. Berryhill*, No. 16

CV 11136, 2018 WL 4384566, at *6 (N.D. Ill. Sept. 14, 2018) ("Judge Kim instructed the ALJ

[on remand] to discuss and analyze [the treating physician's] specialization as a neurosurgeon,

along with the length and frequency of the treating relationship with Claimant, and his

knowledge of her impairments.  The ALJ, however, does not discuss the length and frequency of

13

the treating relationship, even in the new portion of her analysis detailing medical evidence. The

ALJ's failure to follow the law of the case requires remand." (internal citations omitted)).

Here, the ALJ provides no compelling reason why he did not follow the principles set

forth in the Seventh Circuit's opinion. While the ALJ disagreed with the Appellate Court's

analysis, he was not free to disregard its instructions on remand. Accordingly, remand is again

necessary based on this point alone. In the interest of completeness, however, the undersigned

will address Knapp's remaining two arguments.

### E.  Dr. Boen's Opinion

Knapp also challenges the ALJ's weighing of Dr. Boen's opinion, relying on arguments

that largely mirror those she advanced about Dr. Kidder's opinion.  In particular, Knapp

contends that the ALJ "further erred by failing to give due weight to the [Commissioner's] own

psychological consultative examiner who opined repeatedly that Knapp would have difficulty

concentrating, staying on task, and remembering what [she was] asked to do at work." (ECF 19

at 17).

On August 14, 2012, Dr. Boen conducted a consultive examination of Knapp where he

diagnosed her with generalized anxiety disorder; panic disorder without agoraphobia; and major

depressive disorder, recurrent, moderate. (AR 849). Dr. Boen opined that Knapp "could

understand what she was asked to do on a job but would have trouble remembering it," "would

not be able to concentrate and stay on task," but "would be able to get along with her coworkers

and boss." (AR 850). Dr. Boen assigned Knapp a Global Assessment of Functioning ("GAF")

score of 45. As the Court of Appeals explained, "scores from 41 to 50 indicating serious

difficulty functioning psychologically, socially, and occupationally."[4]  *Knapp*, 741 F. App'x at 327.  On October 13, 2014, Dr. Boen conducted a second consultive examination where he made substantially the same findings, but added a diagnosis of alcohol use disorder, moderate.  (AR 1585).

In his initial decision, the ALJ afforded both Dr. Boen's opinion and his assigned GAF score little weight.  (AR 1053, 1060-61).  As to the GAF score, the ALJ determined that it and similar GAF scores recorded by other treatment sources were entitled to little weight because "they appear[ed] out of proportion to the recorded observations by Dr. Kidder, other treating medical sources, and the findings of the reviewing State Agency psychologists."  (AR 1053).  The ALJ similarly afforded little weight to Dr. Boen's opinion regarding Knapp's inability to stay on task, concentrate, and difficulty remembering tasks, stating that such opinions were inconsistent with other medical sources' records which "indicated much more normal mental functioning."  (AR 1061).

In his second decision, the ALJ—while recognizing the Seventh Circuit's opinion—adopted the same reasoning:

> For the same reasons as previously outlined in the prior decision, the [ALJ] continues to find that Dr. Boen' s opinions with regard to deficits in staying on task, remembering job tasks, and maintaining concentration are not supported, and as such, only limited weight has been accorded to his opinions. . . .  The [ALJ] finds that the [GAF] evidence is inconsistent with serious symptoms (as reflected in the GAF scores) throughout the period at issue.

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning.  Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000).  A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  *Id.*  A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *Id.*

(AR 1893).

Again, though, the ALJ ignored "principles set forth in the [appellate] judicial decision." *Wilder*, 153 F.3d at 803. As the Seventh Circuit explained, "the ALJ was not permitted, without referring to medical evidence or ordering additional testing, to reject Dr. Boen's GAF ratings." *Knapp*, 741 F. App'x at 329 (citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014); 20 C.F.R. §§ 404.1519a(b)(3), 404.919a(b)(3)). Indeed, the Appellate Court specifically found that the record did not show "that the ALJ gave sound reasons for assigning 'little weight' to Dr. Boen's GAF scores." *Id.*

Setting aside the "law of the case" issue for the moment, the ALJ also failed to sufficiently explain his reasoning. As mentioned, Dr. Boen acted as a consultive examiner. "It is unusual . . . for an ALJ to reject an examining [agency] doctor's opinion because doctors hired by the agency are unlikely to be biased toward claimants the way treating physicians may be, and they are unlikely to exaggerate a claimant's disabilities." *Lear v. Comm'r of Soc. Sec.*, No. 2:14-cv-307, 2016 WL 1165682, at *3 (N.D. Ind. Mar. 24, 2016). "Although an ALJ is not required to accept the views of an agency examining physician if there is a contrary opinion from a later reviewer or other compelling evidence, the ALJ still must have a good explanation for rejecting or discounting the examining physician's opinion." *Czarnecki v. Colvin*, 595 F. App'x 635, 642 (7th Cir. 2015).

Here, the ALJ primarily discounted Dr. Boen's opinion and GAF score because they were inconsistent with Dr. Kidder's treatment notes which regularly reflected normal mood and alertness, and because Knapp did not raise similar complaints to other medical sources. (AR 1892-93). In *Bauer v. Astrue*, the Seventh Circuit remanded the case based upon the ALJ's reasons for discounting the opinion of the claimant's treating physician, who articulated that the

16

claimant's manic-depressive illness precluded her from maintaining a full-time job. 532 F.3d

606 (7th Cir. 2008). There, the ALJ observed that the claimant "dresse[d] appropriately,

shop[ped] for food, prepare[d] meals and perform[ed] other household chores"; and that one of

the doctor's treatment notes stated "the plaintiff's memory was 'ok,' her sleep fair, she was

doing 'fairly well,' her 'reported level of function was found to have improved,' she had 'a

brighter affect and increased energy,' [and] she 'was doing quite well.'" *Id.* at 608-09. In

remanding the case, the Seventh Circuit emphasized that "[a] person who has a chronic disease,

whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is

likely to have better days and worse days." *Id.* at 609 ("Suppose that half the time she is well

enough that she could work, and half the time she is not. Then she could not hold down a full-

time job."). Similarly, the ALJ here failed to adequately explain why a finding that Knapp had,

for example, a "normal mood" during a doctor's appointment on a given day was inconsistent

with Dr. Boen's opinion that Knapp would have difficulty concentrating, staying on task, and

remembering what she was asked to do at work on a full-time basis.

In summary, because the ALJ violated the law-of-the-case doctrine as it relates to his

analysis of Dr. Boen's opinion, remand is necessary. On remand, the ALJ should provide

additional analysis of why Dr. Boen's assessment is inconsistent with the medical record.

*E. Due Process*

Finally, Knapp asserts that remand is necessary due to "procedural anomalies" and "due

process concerns." (ECF 19 at 19-20). Specially, Knapp asserts that ALJ frequently cites to his

previous decision and suggests that the Seventh Circuit misinterpreted the Act and exceeded its

constitutionally delegated powers by "prejudge[ing]" this matter and denying her a meaningful

17

opportunity to be heard.  (ECF 19 at 19-21 (citing AR 1887, 1892-93)).  Knapp similarly points

to comments made by the ALJ during the most recent administrative hearing.  (*See* AR 3324-25).

"Due process requires that a Social Security disability claimant be offered a 'full and fair'

hearing."  *Davenport v. Astrue*, 417 F. App'x 544, 546 (7th Cir. 2011) (quoting *Ventura v.*

*Shalala*, 55 F.3d 900, 902 (3rd Cir. 1995)).  In general, an ALJ is presumed to be unbiased.  *See*

*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2016).  Such presumption,

however, can be rebutted by showing that the ALJ "displayed deep-seated and unequivocal

antagonism that would render fair judgment impossible."  *Liteky v. United States,* 510 U.S. 540,

556 (1994); *see also Valentine*, 574 F.3d at 690.  "Bias cannot be inferred from a mere pattern of

rulings by a judicial officer, but requires evidence that the officer had it 'in' for the party for

reasons unrelated to the officer's view of the law, erroneous as that view might be."  *McLaughlin*

*v. Union Oil Co. of Cal.*, 869 F.2d 1039, 1047 (7th Cir. 1989).

Here, though the undersigned believes that the ALJ failed to follow the Seventh Circuit's

ruling, nothing in the record suggests that the ALJ has "personal enmity" towards Knapp which

would violate due process.  *See Davenport*, 417 F. App'x at 547.  Indeed, the ALJ's reasoning

and comments noted by Knapp appear to have been drawn solely from the ALJ's view of what

was required of him under the Act and its accompanying regulations, as well the proper role and

powers assigned to the branches of the federal government.  In other words, they appear to have

stemmed solely from the ALJ's view of the law.  While the ALJ may have failed to follow the

Seventh Circuit's ruling, or misapplied the law, these are not violations of due process.

Accordingly, remand on due-process grounds is unnecessary.

Having said that, it is the undersigned's view that a new ALJ should consider the case

upon remand to gain a fresh perspective, given the ALJ's failure to follow the Seventh Circuit's

ruling and law of the case. *See, e.g.*, *Gister v. Massanari*, 189 F. Supp. 2d 930, 938 (E.D. Wis. 2001) ("[I]n light of this court's comments, and the fact that the same ALJ has reviewed the record twice, it is recommended that a new ALJ be assigned on remand."). "This Court recognizes that it does not have the authority to order the remand to a new ALJ." *Greenan v. Colvin*, No. 15 C 4544, 2016 WL 3662422, at *2 (N.D. Ill. July 11, 2016); *see Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993) ("Selecting a new ALJ is a decision for the Secretary to make when there has been no proof of bias or partiality by the original ALJ of the case."). Therefore, the undersigned recommends that the Court "respectfully suggest . . . that the Commissioner assign this matter to a different ALJ on remand." *Id.*; *see Thompson v. Berryhill*, 722 F. App'x 573 582 (7th Cir. 2018) ("We encourage the agency to assign Thompson's file to a new ALJ, both because of the hostility the current ALJ has shown to previous remands and because of the benefit of a fresh perspective.").

## IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's decision be REVERSED and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation, and that the Court encourage the Commissioner to assign a new ALJ upon remand.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE

DISTRICT COURT'S ORDER. *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v.*

*Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Entered this 27th day of January 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge